Smith, P. J.
Isaac Smith died in September, 1876, leaving real and personal property, and a will, in which he appointed the appellant, John B. Collamer, his son-in-law, sole executor. He left Mary Ann Smith, the respondent, his widow, and Alice I). Collamer, Charles H. Smith and Willie Smith, an infant, his children and only heirs at law.
By his will, the deceased gave to the widow the household furniture, team, stock, tools, and other loose property. He also gave her “ the interest as it shall be paid each and every year during her natural life on what money and on all moneys I have or may have at interest at the time of my death.”
He gave certain property to his children, and the widow was made general guardian of his infant son, and was to have charge of his support.
The will was proved and letters testamentary were issued to the appellant, in January, 1877. On the 26th of October, 1878, the executor filed his petition for a settlement of his accounts, and on the 22d of November, 1878, having presented an account, he took a decree settling his accounts. That decree found “ a balance due the estate of 18,615.10, upon winch the widow is entitled to interest during her lifetime.” On the 6th of June, 1883, the widow, not being satisfied with the executor’s doings, filed her petition and obtained a citation requiring the executor to account. Thereupon, the executor, on the 19th of June, 1883, filed his own petition for. a judicial settlement of his. accounts. The two petitions were heard together. The executor filed his answer to the respondent’s petition, and filed his account in connection with his own petition. Objections were made to the account, and a reference was ordered to examine the account *198 and report to the surrogate’s court. On' the hearing before the referee, the executor took the position that the decree of 22d November, 1878, was conclusive, and no investigation of accounts back of that could be had. Thereupon the respondent filed a petition and made a motion before the Surrogate, to vacate the decree of November, 1878, and the motion was granted and that decree vacated, on the 5th of September, 1883. The accounting then proceeded before the referee, who afterwards filed his report.
Upon the hearing before the surrogate after the filing of the report, the surrogate disallowed an item of $185.14, the amount of an asset known as the “ Shay” note, with interest, with which the referee charged the executor. Notwithstanding that disallowance, the surrogate, by his decree, adjudged that the principal sum in the hands of the executor upon which interest should be computed, was, at the time of his settlement in November, 1878, $8,773.40 instead of $8,615.10 as fixed in that settlement, and he charged the executor with the deficiency. The decree also made a slight reduction in the commissions allowed to the executor. ■ The decree directed the executor to pay to the widow or her counsel, out of the said principal of the estate, “as and for her costs, and for fees to counsel in this proceeding the sum of $300, at which sum said costs and counsel fees are fixed and allowed, and that he retain therefrom the sum of $64. heretofore paid as the fees of the referee herein.” The decree also adjudged that the respondent “ is entitled to be paid annually, according-to the terms of said will, the interest to be computed from April 10th, 1884, “ on the amount of the principal of $ 8,773.40, after deducting the executor’s commissions, the said allowance of $300 for the respondent’s costs and counsel fees, and $ 64, referee’s fees. No costs were allowed to the executor.
The appellant’s counsel contends that the decree is erroneous in not allowing to the executor costs by way of indemnity for the expense and trouble to which he was subjected in defending his proceedings against the attacks made upon them by the contestant in the accounting. The answer to that contention, we think, is, that the granting of such costs is discretionary with the surrogate, (Code C. P., §. 2562.) the appellant suggests that the discretion was abused, but we find no evidence of that. It is true, the executor succeeded in part before the referee and also before the surrogate, but he also failed in part, and by interposing the decree of November, 1878, as a bar, which, it seems, was irregular for the want of due service upon parties interested, he added largely to the expense and trouble of thé contestant in the accounting, and delayed the proceeding. In view of the circumstances, it is impossible to say that the surrogate abused his discretion.
*199 Next, it is contended that the surrogate erred in his allowance of costs to the contestant. They are not decreed against the executor personally, but are to be paid out of the principal of the estate. If it be conceded that the executor, although not personally charged, may question the propriety of the allowance, as the trustee and representative of the residuary legatees, still we think, that in this particular also, the surrogate had discretionary power, and there is no evidence that his power was exceeded or his discretion abused. By section 2558, of the Code of Civil Procedure, the award of costs in a surrogate’s decree is in the discretion of the surrogate, with certain exceptions specified in the section, neither of which embraces a case like the one before us. Not only is it thus discretionary with the surrogate to award costs, that is, to determine whether any, and which, of the parties is entitled to costs, but also to determine the amount of costs, within certain limits, except the costs awarded upon a jury trial, and the costs of an appeal. In the former of the cases so excepted, the costs awarded in the surrogate’s court are the same as the taxable costs in an action in the supreme court, in the latter, the same as if they were awarded in the supreme court. (Code, §. 2560.) In cases other than those within the two exceptions above pointed out, the limits within which the discretion of the surrogate may be exercised are prescribed by section 2561 of the Code. He may fix "such a sum, as costs, in addition to disbursements, as he deems reasonable, not exceeding twenty five dollars, where there has not been a contest, or seventy dollars where there has been a contest and in addition thereto, where a trial or hearing upon the merits before the surrogate necessarily occupies more than two days, ten dollars for each additional day ; and where a motion for a new trial is made before the surrogate, if it is granted, seventy dollars; if it is denied, forty dollars.” In this case, it does not appear affirmatively, so far as we have been able to discover from the record, how many days were occupied in the hearing before the surrogate. If the number of days occupied in the examination before the referee were to control the number of days for which the referee charged fees, might be regarded as evidence. He charged for sixteen days. But the time occupied in the trial or hearing before the surrogate is the guide. Whether the trial or hearing before the referee is to be regarded as a trial or hearing before the surrogate, within the meaning of section 2561, is a question of some doubt. The word “surrogate ” as there used, is defined in the Code as including “ every officer or court vested by law with the functions of surrogate.” (§. 2514, Subd. 7.) But this definition gives rise to another question, namely, whether the officers or courts referred to therein as being vested with the functions of surrogate, are those only upon whom functions of *200 surrogate, are conferred by certain preceding sections of tbe Code contained in article second of the same chapter; or whether they embrace a referee appointed by the surrogate to examine an account and report to the court. Section 2546 of the Code is intended to define the powers of such a referee. That section provides that in a “ special proceeding, other than one instituted for probate, or revocation of probate, of a will, the surrogate may appoint a referee ... to examine an account rendered, to hear and determine all questions arising upon the settlement of such an account, which the surrogate has power to determine.” Thus far, the provisions of the section would seem to indicate that the referee is so far vested with the functions of the surrogate, as that his determination of the matters referred to him is final in that court. But the next clause in the section provides that the referee is to make a report subject, however, to confirmation by the surrogate. That is followed by a provision that “such a referee has the same power, ... as a referee appointed by the supreme court, for the trial of an issue of fact in an action ; and the provisions of this act, applicable to a reference by the supreme court, apply to a reference made as prescribed in this section, so far as they can be applied in substance, without regard to the form of the proceeding.” But in certain actions in the supreme court, a referee appointed to hear and determine the issue has the powers and functions of the court in that respect, and judgment may be entered directly upon his report which can only be reviewed by appeal, while, in others, the report of the referee must be confirmed by the court, before judgment can be entered upon it. So that it is not easy to decide whether the trial or hearing before the referee in this case is to be regarded as a trial or hearing before the surrogate, within the meaning of section 2561. But the question is probably not material to the case, and we do not decide it. For in any event, the time necessarily spent in the trial or hearing, before the surrogate himself, may be adopted as a basis of taxation, and there is nothing in the record to show but that such time, of itself, furnishes a sufficient basis for the allowance. If it did not, the remedy of the appellant was to move, upon an affidavit showing the actual number of days spent, to correct the allowance contained in the decree, and if the motion had been decided adversely to him, he might have appealed from the order. (Code, §. 2570.) If it affirmatively appeared that the allowance exceeded the limits set by the Code, we could reverse for that reason, but with the exercise of the discretion of the surrogate, within the statutory bounds, we cannot interfere.
An objection is taken to the referee’s method of computing interest, in that he made no deduction or allowance for uninvested funds, or periods of idleness between investments when *201 interest was not earned, or where there was a loss of interest on deposits in savings banks from the occurrence of “ quarter days ” between which, on deposit or withdrawal of funds, no interest is paid. The points of the appellant’s counsel do not refer as to any evidence of an interval in the investment of any particular sum, and upon a somewhat careful examination of the case we have found none. The executor, in his testimony, speaks of having paid to the widow “ interest on uninvested funds,” but we are not aware of any proof that the executor has been charged with interest which he did not receive, or which, with reasonable diligence, he might have received, on the funds in his hands.
The only remaining question is, whether the decree should be modified in respect to the further payment of interest by the executor to the respondent. The decree provides that the respondent is entitled to be paid annually, according to the terms of the will, the interest on $8,277.26 to be computed from April 10th, 1884. This does not absolutely require the appellant, as his counsel seems to suppose, to pay the interest whether he receives it or not. Interest is to be paid according to the terms of the will; and the will gives to the widow the interest “ as it shall be paid,” that is to say, as it shall be realized upon the investments of the estate. We see nothing in this of which the executor can rightfully complain.
The date from which interest is to be computed, April 10th, 1884, is complained of as being arbitrarily fixed by the surrogate. The complaint seems well founded. The case shows no reason, that we have discovered, for adopting that date. As the will does not specify a date from which the annual interest should be computed, the law fixes the day of the death of the testator, for that purpose. The decree of the surrogate recites that he died on the 18th of December, 1876. The referee, in his opinion, speaks of the 8th of that month as the day of his death, but that is evidently a mistake, as the will is dated the 9th of the same month. The respondent’s counsel says in his brief, that the 10th of April was adopted by the surrogate, at the suggestion of the appellant’s counsel, but of that there is no evidence in the record.
The decree may be modified by substituting the “ 18th of December, 1883,” in lieu of “ April 10th, 1884,” wherever the latter occurs, and making a corresponding change in the amount of interest specified in the decree, (unless both parties stipulate in writing, within ten days, that the decree may stand as it is,) and as modified or agreed on by such stipulation, affirmed, with the taxable costs and disbursements of this appeal, to the respondent, to be paid out of the principal of the estate ; and thereafter, the amount of principal, on which the respondent is entitled to be paid annual interest, according to the terms of the *202 will, is the sum of $8,277.26, less the amount of sucb costs and disbursements, and tbe decree may be further modified accordingly.
Baukee,, Haight and Bradley, JJ., concur.
So ordered.